IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STUART L. STEIN, and STUART L. STEIN,
P.A., a professional law corporation d/b/a
THE STEIN LAW FIRM,

      Plaintiffs,

vs.                                                                              No. CIV 04-0840 JB/DJS

DISCIPLINARY BOARD OF THE
SUPREME COURT OF NEW MEXICO,
RICHARD J. PARMLEY, JR., Chair,
JAMES F. BECKLEY, PATRICK A.
CASEY, FRANKIE D. CLEMONS, ROGER
L. COPPLE, BRUCE HERR, MICHAEL H.
HOSES, ROBERT S. MURRAY, MIKE G.
PAULOWSKY, WILLIAM G. W. SHOOBRIDGE,
SASHA SIEMEL and ELIZABETH E.
WHITEFIELD, all members of the Disciplinary
Board and HON. PETRA MAES, HON. PAMELA
B. MINZNER, HON. PATRICIO M. SERNA,
HON. RICHARD C. BOSSON and HON.
EDWARD L. CHAVEZ, the Chief Justice and
Justices of the Supreme Court of New Mexico,
VIRGINIA L. FERRARA, SALLY
SCOTT-MULLINGS AND SARAH KARNI,
Chief Disciplinary Counsel and
Assistant Disciplinary Counsel,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

     **THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss and/or for

Summary Judgment Counts I, II, III, IV, V, and VI, filed February 24, 2005 (Doc. 27).  The Court

held a hearing on this motion on October 13, 2005.  Pursuant to the Plaintiffs' request, see Letter

from Stuart L. Stein to the Honorable James O. Browning, filed October 14, 2005 (dated October

14, 2005), the Court allowed the parties to present additional briefing on the issue of absolute judicial immunity, <u>see</u> Order at 1-2, filed March 14, 2006 (Doc. 67).  The primary issues are: (i) whether Counts I and II present a sufficient case or controversy that the Court should decide the First Amendment issues that they present; (ii) whether the Court should dismiss Count III based on absolute prosecutorial immunity and/or qualified immunity; (iii) whether the Court should dismiss Count IV based on absolute prosecutorial immunity and/or qualified immunity; and (iv) whether the Court should  dismiss Count V based on absolute judicial immunity.  Because the Court concludes that Counts I and II are too speculative and not ripe, and do not present a case or controversy, the Court will dismiss Counts I and II without prejudice.  Because the Court finds that absolute immunity bars Counts III, IV, and V, the Court will grant the Defendants' motion and dismiss all federal claims brought in Counts III, IV, and V with prejudice.  The Court will also dismiss Count VI.

## PROCEDURAL BACKGROUND

Since 1994, the Plaintiffs have advertised to the public free seminars about estate planning. <u>See</u> Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment ("Memorandum in Opposition") at 1, filed April 27, 2005 (Doc. 35).  At those seminars, the Plaintiffs invited the interested attendees to take advantage of a free consultation with an attorney of the firm to discuss individualized estate planning.  <u>See</u> <u>id.</u> at 1-2.  At different times during this period, Plaintiff Stuart L. Stein was the only attorney in the law firm; at other times, two attorneys were in the law firm.  <u>See</u> <u>id.</u> at 2 n.1.

The Plaintiffs submitted a proposed advertising copy to the Legal Advertising Committee of the Disciplinary Board ("LAC") pursuant to the then-existing rules.  <u>See</u> <u>id.</u> at 2. The Plaintiffs represent that the LAC approved some advertisements.  <u>See</u> <u>id.</u>  The LAC rejected some

advertisements, but ultimately approved them after the Plaintiffs incorporated changes -- that the LAC requested -- in the revised advertisements.  See id.

The Plaintiffs contend that, in 2001, other estate planning attorneys sent a letter to the LAC alleging that portions of the Plaintiffs' advertising were untrue or misleading.  See id.  The Plaintiffs further contend that, rather than contacting the Plaintiffs about this complaint for a response, the LAC forwarded the letter to disciplinary counsel, with a copy to the Plaintiffs. See id.  Disciplinary counsel contacted the Plaintiffs and asked for a response to this complaint.  See id.  Disciplinary counsel informed the Plaintiffs that she would file formal charges unless the Plaintiffs changed their advertising and accepted sanctions for the legal advertising rules' violations.  See id.

A.    **Stein I.**

The Plaintiffs filed a federal lawsuit in the United States District Court for the District of New Mexico, on July 29, 2002 against the LAC, the Disciplinary Board, and the Supreme Court of New Mexico.  See Stein v. Legal Advertising Comm. of Disciplinary Bd., 272 F. Supp.2d 1260, 1265 (D.N.M. 2003)(Garica, J.)("Stein I").  As the United States Court of Appeals for the Tenth Circuit summarized:

> He sought a preliminary injunction prohibiting the Disciplinary Board from acting against him. He alleged violations of the First Amendment, the Due Process Clause, and the Equal Protection Clause, pursuant to 42 U.S.C. § 1983.  In response, the Defendants filed a motion to dismiss based on abstention, exhaustion, and/or immunity, motions for partial summary judgment on each claim asserted, and a response to the preliminary injunction motion.
>
> On October 22, 2002, [disciplinary counsel] filed formal charges against Mr. Stein. The Disciplinary Board convened a hearing committee to consider the evidence and make findings of fact regarding the charges (hereinafter, *Stein Disciplinary Proceeding*). On February 6, 2003, the district court granted the Defendants' motion to dismiss on *Younger* abstention grounds, concluding that the *Stein Disciplinary Proceeding* was in progress and that Mr. Stein would have an opportunity to raise any

constitutional claims during that proceeding.

Stein v. Legal Advertising Comm. of Disciplinary Bd., 122 Fed. Appx. 954, 955-56 (10th Cir. December 22, 2004)("Stein III").[1]  See Younger v. Harris, 401 U.S. 37 (1971).  The Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge, District of New Mexico, found that the constitutional issues and relief requested could be determined in the disciplinary matter.  See Stein I, 272 F. Supp. 2d at 1272-74.

**B.    Stein II.**

The Tenth Circuit summarized Stein II as follows:

> On March 17, 2003, the hearing committee issued an order noting that any arguments Mr. Stein wished to raise about the constitutionality of the New Mexico Advertising Rules could be raised by a motion to dismiss, as an affirmative defense in his answer, or both. On April 9, 2003, the LAC denied two new advertisements submitted by Mr. Stein.  The LAC also advised Mr. Stein that if he did not terminate use of these advertisements he might face professional discipline.

Stein III, 122 Fed. Appx. at 956.  Because the Plaintiffs did not think they would receive a swift hearing on the merits of their constitutional claims, and in response to denial of the new advertisements, the Plaintiffs filed another federal lawsuit -- Stein II:

> In response to denial of the new advertisements, Mr. Stein filed another federal lawsuit (hereinafter *Stein II*).  The complaint in *Stein II* alleged violations similar to those alleged in *Stein I*.  On April 21, 2003, the Defendants filed a motion to dismiss. On April 22, 2003 the district court issued an order dismissing the case without prejudice, again on *Younger* abstention grounds.

Stein III, 122 Fed. Appx. at 956.

**C.    Stein III.**

The Tenth Circuit explained the development of Stein III as follows:

---

[1] In their motion, the Defendants, in the interest of judicial economy, incorporate the Tenth Circuit's summaries regarding the three previous lawsuits known as Stein I, Stein II, and Stein III.

> After *Stein II* there were two notable developments.  First, the Plaintiffs filed a
> counterclaim and a third party claim in the *Stein Disciplinary Proceeding*.
> [Disciplinary counsel] filed a motion to strike these claims because the hearing
> committee had already advised Mr. Stein to file any constitutional claims in a motion
> to dismiss or in his answer.  Second, Mr. Stein filed a petition before the Disciplinary
> Board seeking declaratory relief and appealing the LAC's denial of the *Stein II*
> advertisements.  In response, the Disciplinary Board issued an order staying the *Stein
> Disciplinary Proceeding*.  The Disciplinary Board issued the stay because the
> constitutional issues raised by the petition for declaratory relief and the appeal of the
> *Stein II* advertisements encompassed the same constitutional issues implicated in the
> *Stein Disciplinary Proceeding*.

Id.  According to the Plaintiffs, they filed Stein III because more than forty days had passed since the

service of the papers without response -- from the LAC or from its counsel -- to the Declaratory

Judgment Action.  The Plaintiffs alleged in Stein III that the avenue of relief that the Defendants

offered in Stein II was illusory; there were no rules of procedure governing the appeal of an adverse

ruling and/or declaratory relief.  The Plaintiffs believed that the Defendants were stonewalling.  The

Tenth Circuit explained:

> The complaint was largely similar to *Stein I & II*, but alleged that the two
> developments since *Stein II* eliminated the abstention rationale.  The Defendants filed
> a motion to dismiss and/or for summary judgment.  On June 17, 2003, the district
> court dismissed the case without prejudice on *Younger* abstention grounds.  Mr. Stein
> filed a timely appeal.

Id.

**D.    Stein IV.**[2]

      **1.    Specification of Charges Before the Disciplinary Committee.**

According to the Plaintiffs' Second Amended Complaint, in July 2003, approximately one

---

[2] The Court has assembled the chronology of the events following Stein III to the best of its
ability based on the record before the Court.  The Court notes, however, that the form in which the
parties briefed the issue and the ongoing judicial notices provided by the parties make it difficult to
discern the events' sequence.

month after Judge Garcia's disposition of the <u>Stein III</u> case, Defendants Sally Scott-Mullins, Sarah Karni, disciplinary counsel, and Virginia L. Ferrara, chief disciplinary counsel, served Stein with a Specification of Charges, which alleged twenty-one violations of the Code of Professional Responsibility.  <u>See</u> Second Amended Complaint ¶ 18, at 5.  The Plaintiffs allege various defects in the investigation and discovery pertaining to the hearing proceedings on these charges.  <u>See id.</u> ¶¶ 20-23, at 6-7.  The Plaintiffs also maintain that the disciplinary counsel brought the July 2003 charges as a retaliatory action because of the previous federal lawsuits in which the Plaintiffs raised the unconstitutionality of the LAC rules.  <u>See id.</u> ¶ 24, at 7.

The Plaintiffs admit that, after four days of evidentiary hearings, a Disciplinary Board Hearing Committee determined that the Plaintiffs violated four ethical rules.  <u>See id.</u> ¶ 26, at 7.  The Committee forwarded these findings to a three-member panel of the Disciplinary Board.  <u>See id.</u> at 7-8.  Mr. Stein filed a Memorandum Brief Appealing the Committee's Findings, Conclusions and Recommendations for Discipline, in which he outlined the alleged deficiencies in the process before the Hearing Committee on the disciplinary charges.  <u>See</u> Respondent's Memorandum Brief Appealing the Committee's Findings, Conclusions and Recommendations for Discipline, <u>In the Matter of Stuart L. Stein</u>, Disciplinary No. 06-2003-458 (Supreme Court of New Mexico Disciplinary Board).  The Supreme Court of New Mexico adopted the hearing committee's recommendations with some modification and ordered that Mr. Stein: (i) receive a formal reprimand in the bar bulletin; (ii) pay $1,666.55 in restitution to Peter Bogarosh; (iii) successfully pass the multi-state responsibility examination; and (iv) pay costs incurred in the proceedings in the amount of $7,840.67.  <u>See</u> Order of New Mexico Supreme Court, <u>In the Matter of Stuart L. Stein, Esquire</u>, at 1-2, No. 17,349 (September 23, 2005).

2.      **Declaratory Judgment Action.**

The Plaintiffs contend that the declaratory judgment action before the Disciplinary Board did not move forward after Judge Garcia's dismissal of <u>Stein III</u>.  <u>See</u> Memorandum in Opposition at 4. To get the matter moving, the Plaintiffs served a Motion for Default.  <u>See Stein v. Legal Advertising Committee</u>, Motion for Default, Misc. No. 03-001 (Supreme Court of New Mexico Disciplinary Board)(served by mail on December 30, 2003).  The Plaintiffs assert that the Hearing Committee believed it had no power to issue a default.  <u>See</u> Memorandum in Opposition at 4.

Soon thereafter, Jerry Walz filed an appearance on the LAC's behalf.  <u>See Stein v. Legal Advertising Committee</u>, Entry of Appearance, Misc. No. 03-001 (served by mail on March 26, 2004). When months passed without a filed response, the Plaintiffs served a Renewed Motion for Default. <u>See Stein v. Legal Advertising Committee</u>, Renewed Motion for Default (served by mail on August 27, 2004).  Ms. Ferrara, chief disciplinary counsel, disclosed to Mr. Stein on September 3, 2004 that the Hearing Committee issued its opinion on the Petition for Declaratory Relief months earlier.  <u>See</u> Letter to Stuart L. Stein from Virginia Ferrara at 1 (dated September 3, 2004); <u>Stein v. Legal Advertising Committee</u>, Hearing Committee's Findings of Fact Conclusions of Law and Recommendations to the Disciplinary Board.[3]  In the opinion, the Hearing Committee -- referred to as the Thayer Hearing Committee -- held that they had no authority to issue declaratory judgments. <u>See</u> Hearing Committee's Findings of Fact Conclusions of Law and Recommendations to the Disciplinary Board ¶ 7, at 5.  The Thayer Hearing Committee recommended that the Disciplinary Board dismiss the proceeding as moot because it did not have authority to issue declaratory

---

[3] Stein asserts that the Committee issued its findings in July 2004, and that Ms. Ferrara received the determination before July 1, 2004.  <u>See</u> Second Amended Complaint ¶¶ 39-40, at 10-11.

judgments.  See id. ¶¶ 7,9, at 5.  Stein represents that in September 2004, the Thayer Hearing Committee's determination was sent to the Tenth Circuit for judicial notice after briefing closed in the appellate case.  See Memorandum in Opposition at 4.

### 3.    Current Litigation.

The Plaintiffs' current litigation, known as Stein IV, commenced when the Plaintiffs filed their initial Complaint on July 26, 2004.  See Complaint for Preliminary Relief and Declaratory Judgment (Doc. 1).  Stein IV contained three claims for relief: (i) Count I -- Declaratory Judgment; (ii) Count II -- Preliminary and Permanent Injunctive Relief; and (iii) Count III -- Attorney Fees and Costs pursuant to 42 U.S.C. § 1988.  See id. at 7-8.  That same day, the Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction.  See Doc. 2.  The Defendants filed a Response to the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction on Monday, August 2, 2004.  See Doc. 6.  The Plaintiffs filed a Reply to Defendants' Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction on August 3, 2004. See Doc. 7.

The Court held a hearing on August 3, 2004 on the Plaintiffs' Motion for Temporary Restraining Order and Injunctive Relief.  The Plaintiffs argued that a plain reading of rule 17-304 with rule 17-205 prohibits an attorney complainant from violating the confidentiality of ethical complaints to the Disciplinary Board.  Rule 17-304 provides in relevant part:

A. Confidentiality. Except as otherwise provided by this rule, any investigation and any investigatory hearing conducted by or under the direction of disciplinary counsel, or disciplinary counsel's authorized agents, shall be entirely confidential unless and until they:

   (1) become matters of public record by:

(a) the filing of a formal specification of charges with the Disciplinary Board pursuant to Rule 17-309 N.M.R.A.;

(b) the filing of a summary suspension proceeding pursuant to Rule 17-207 N.M.R.A.;

(c) the filing of an incompetency or incapacity proceeding pursuant to Rule 17-208 N.M.R.A.;

(d) the filing of a reinstatement proceeding pursuant to Rule 17-214 N.M.R.A.; or

(e) the filing of a motion for order to show cause why a respondent should not be held in contempt pursuant to Paragraph G of Rule 17-206 N.M.R.A.; or

(2) are otherwise released according to these rules.

B. Exceptions. Information relating to disciplinary proceedings may be released by disciplinary counsel prior to filing formal charges as follows:

(1) where investigation reasonably causes disciplinary counsel to believe in good faith that a crime may have been committed by an attorney, the name of the subject, general nature of the possible crime, relevant facts and documents and names of known witnesses to relevant facts shall be made available to an appropriate prosecuting authority;

(2) if the respondent-attorney has filed with the office of disciplinary counsel a written waiver of confidentiality; or

(3) upon written request from the Client Protection Fund Commission, such information as may assist the commission in determining the validity or worthiness of a specific claim filed with that commission may be submitted to that commission with the understanding and condition that commission members receiving and reviewing such information are subject to the provisions of Subparagraph (5) of Paragraph C of Rule 17-105 N.M.R.A. as well as the rules of confidentiality governing the Client Protection Fund Commission.

N.M.R.A. § 17-304(A)-(B).  Rule 17-205 provides:

The license to practice law in this state is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court. It is the duty of every recipient of the conditional privilege to practice law to conduct

himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for that privilege.

Acts or omissions by an attorney, individually or in concert with any other person which violate the Rules of Professional Conduct or violate the provisions of a court rule, statute or other law shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

N.M.R.A. § 17-205.  At oral argument for preliminary injunction, the Defendants' counsel agreed to a Stipulated Order.

As a result of that hearing, the Court entered a Stipulated Order on August 31, 2004, see Doc. 9, wherein the Court retained jurisdiction if a scenario occurred where disciplinary action was initiated against Mr. Stein for making public statements subsequent to the filing of a disciplinary complaint by Mr. Stein against others pursuant to rule 17-304.  It was the Defendants' contention that the confidentiality provision of rule 17-304 only applied to disciplinary counsel and no one else. The parties agreed in the Stipulated Order that, if the Plaintiffs filed a disciplinary complaint, and then were disciplined for speaking out about such complaint, the Court would retain jurisdiction over the matter and hold a prompt hearing, and the Defendants would not invoke Younger abstention.  See Stipulated Order ¶¶ 2-3, at 2.

Mr. Stein sent a letter of formal complaint against Ms. Ferrara, to Richard J. Parmley, Chairman of the Disciplinary Board.  See Letter of Complaint from Stuart L. Stein to Richard J. Parmley, Jr., Esq. (dated November 5, 2004).  In that Complaint, Mr. Stein alleges that Ms. Ferrara had inappropriate *ex parte* communication with the Supreme Court of New Mexico by requesting that the Supreme Court appoint a special board panel to review the Thayer Hearing Committee's opinion. See id. at 3-4.  Mr. Stein brought this concern to the Supreme Court's attention.  See In the Matter of Stuart L. Stein, Petitioner's Motion to Supreme Court to Deny, Without Prejudice Request to

Appoint a Special Board of Review ¶¶ 4-5, at 2-3 (dated September 13, 2004).  The Plaintiffs also submitted a news release to local media outlets upon filing this disciplinary complaint.  <u>See</u> News Release (dated November 5, 2004).   No disciplinary action pursuant to rule 17-304 has been commenced against Mr. Stein.  <u>See</u> Memorandum in Support of Defendants' Motion to Dismiss and/or for Summary Judgment as to Counts I, II, III, IV, V and VI ("Memorandum in Support") at 6, filed February 24, 2005 (Doc. 28).  The Disciplinary Board cleared Ms. Ferrara of Mr. Stein's complaint.  <u>See</u> Letter from Bradley D. Tepper to Stuart L. Stein, Esq. at 1-2 (dated January 20, 2005).

The Plaintiffs filed their First Amended Complaint for Preliminary Relief and Declaratory Judgment on September 7, 2004, and pled four counts: (i) Count I -- Declaratory Judgment; (ii) Count II -- Preliminary and Permanent Injunctive Relief; (iii) Count III -- Attorney Fees and Costs; and (iv) Count IV -- Due Process Civil Rights Violations and Request for TRO and Preliminary Injunction.  <u>See</u> First Amended Complaint for Preliminary Relief and Declaratory Judgment - Verified (Doc. 10).  On September 7, 2004, the Plaintiffs filed a second Motion for a temporary restraining order and preliminary injunction.  <u>See</u> Second Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 11).  On September 9, 2004, the Defendants filed their Response to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.  <u>See</u> Doc. 16.  Also on September 9, 2004, the Defendants filed a Motion to Dismiss Counts I, II and III, <u>see</u> Doc. 17, and filed a separate Motion to Dismiss Count IV, <u>see</u> Doc. 19.  The Court held a hearing on the Second Motion for Temporary Restraining Order and Preliminary Injunction on September 9, 2004, which it denied.  <u>See</u> Memorandum Opinion and Order at 1, 7, filed August 26, 2005 (Doc. 47).

**4.    Supreme Court of New Mexico Order to Show Cause and Subsequent Federal Litigation.**

One month before oral argument at the Tenth Circuit, the Supreme Court of New Mexico issued the Order to Show Cause under the federal case number assigned to <u>Stein III</u>, ordering the LAC and the Plaintiffs to demonstrate why the Supreme Court should not:

> (1) reverse the Disciplinary Board's Special Hearing Committee's decision that the Disciplinary Board does not have jurisdiction to consider a declaratory action and

> (2) remand the matter to the Disciplinary Board for a hearing on the merits.

<u>In re Stein v. Legal Advertising Board</u>, Order to Show Cause at 1 (dated October 20, 2004).  The Supreme Court ruled that the Disciplinary Board has the authority to consider the Plaintiffs' petition for declaratory relief and appeal of adverse determination, and returned the matter to the Disciplinary Board for a Review Committee under rule 17-314(A).  <u>See Stein v. Legal Advertising Committee</u>, Order at 1-2 (dated October 26, 2004).  The Supreme Court also granted Mr. Stein's motion to deny Ms. Ferrara's request to appoint a special board of review.  <u>See id.</u> at 1.

On November 8, 2004, the Plaintiffs filed a Motion for Reconsideration of the Supreme Court's determination.  <u>See Stein v. Legal Advertising Committee</u>, Stuart L. Stein's Motion for Reconsideration of the October 20, 2004 Order to Show Cause and October 26[] Order Entered on on [sic] This Matter.  On November 22, 2004, the Supreme Court denied the Plaintiffs' motion for reconsideration.  <u>See</u> Order at 1 (dated November 22, 2004).  The Plaintiffs filed a Motion for Judicial Notice with the Tenth Circuit, asking it to take judicial notice of their motion for reconsideration, <u>see</u> Motion for Judicial Notice at 1 (received November 12, 2004), and, thereafter, filed a motion requesting judicial notice of the Supreme Court's denial of their motion to reconsider, <u>see</u> Motion for Judicial Notice at 1 (received December 7, 2004).

-12-

On December 17, 2004, this Court entered an Order to allow the Plaintiffs to file another amended complaint.  See Doc. 24.

On December 22, 2004, the Tenth Circuit issued its decision reviewing the District Court's decision to dismiss Stein III on Younger abstention grounds.  In holding that Chief Judge Garcia correctly dismissed the case, the Tenth Circuit explained:

> The State of New Mexico is attempting to provide Mr. Stein with a forum to present his federal challenges to New Mexico's attorney advertising rules.  Despite being met with Mr. Stein's increasingly inventive motions at every turn, the proceedings continue to meet the conditions that require a *Younger* abstention.  Accordingly, we affirm the ruling of the district court and deny all of Mr. Stein's pending motions.

Stein III, 122 Fed. Appx. at 957.  On the in-progress requirement for Younger abstention, the Tenth Circuit held that "to show that state proceedings are no longer in progress a litigant must show exhaustion of his state appellate remedies."  Id.  The Tenth Circuit then took

> judicial notice of an order issued by the New Mexico Supreme Court on October 26, 2004, stating that the Disciplinary Board has jurisdiction to hear Mr. Stein's petition for declaratory judgment.  This order demonstrates that Mr. Stein has yet to exhaust his state appellate remedies, and consequently his arguments are, at best, premature. He cites no authority for his contention that temporarily staying one element in a group of related state proceedings provides an exception to the exhaustion rule.

Id.

On January 18, 2005, the Plaintiffs filed and served their Second Amended Complaint for Declaratory Judgment and Damages, which is the subject of the Defendants' Motion to Dismiss.  In their Second Amended Complaint for Declaratory Judgment and Damages, the Plaintiffs plead the following: (i) Count I -- Declaratory Judgment as to all Defendants; (ii) Count II -- Permanent Injunctive Relief as to all Defendants; (iii) Count III -- Civil Rights Violations And/Or Prima Facie Tort Claims against Defendant Virginia Ferrara; (iv) Count IV -- Civil Rights and Alternative Claim

for Retaliatory Prosecution, Malicious Prosecution, Malicious Abuse of Process And/Or Prima Facie Tort Against Sally Scott-Mullins, Sarah Karni and Virginia L. Ferrara; (v) Count V -- Civil Rights Claim against the Chief Justice and Associate Justices of the New Mexico Supreme Court; and (vi) Count VI -- Attorney Fees and Costs.  The Defendants contacted the Plaintiffs and requested that they withdraw the Second Amended Complaint.  See Defendants' Motion to Dismiss and/or Summary Judgment Counts ("Motion to Dismiss") I, II, III, IV, V, and VI at 2, filed February 24, 2005 (Doc. 27).  The Plaintiffs refused to withdraw their complaint.  See id.

In addition to the dismissal of the Plaintiffs' claims, the Defendants request that the Court impose sanctions against the Plaintiffs for filing the Plaintiffs' Second Amended Complaint, because allegedly longstanding and clearly established case law precludes the claims in that complaint.  The Plaintiffs oppose this motion.  See id. at 2; Memorandum in Support at 24-25.

On February 4, 2005, Mr. Parmley sent the Defendants' counsel a letter stating the Board's position concerning rule 17-304.  See Letter to Jerry A. Walz from Richard J. Parmley, Jr. (dated February 4, 2005).  The first phrase of the February 4, 2005 letter indicates that Mr. Parmley issued it upon Mr. Walz' request.  See id.  The Board takes the position that the confidentiality requirement does not apply to anyone but disciplinary counsel.  See id.

On April 27, 2005, the Disciplinary Board issued Findings of Fact, Conclusions of Law and an Order based on its review of the Thayer Committee opinion.  See Disciplinary Board Findings of Fact, Conclusions of Law and Order, With Clerical Corrections.  On September 23, 2005, the Supreme Court of New Mexico issued an Order, adopting and modifying the Disciplinary Board's recommendations.  See In the Matter of Stuart L. Stein, Supreme Court of the State of New Mexico Order No. 17,349.

-14-

Pursuant to this Court's Minute Order, filed August 25, 2005, the Defendants have conceded that there are no longer any state proceedings pending relating to Count III and to Count V.  See Defendants' Response to Minute Order ¶¶ 3(a), 3(c), at 1-2.  Although the Defendants, in their response, contend that there are currently pending state proceedings relating to Count IV, see id. at ¶ 3(b), at the hearing the Defendants conceded that there is no pending state action relating to Count IV to invoke abstention, see Transcript of Hearing at 10:12-22 (taken October 13, 2005).[4]  The Plaintiffs state that no state proceedings are pending "under the case styled Stuart L. Stein, Esq. v. Legal Advertising Committee, Misc. No. 03-001."  Plaintiffs' Response to August 25, 2005 Minute Order ¶¶ 1 a-c, at 1-2.  The Plaintiffs did not directly address whether any specific Counts are related to pending state proceedings.  See generally Plaintiffs' Response to Minute Order.

## STANDARD FOR DECIDING MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Courts should grant motions to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure only if it appears that the plaintiff can prove no set of facts in support of the claims that would allow relief, accepting the complaint's well-pled allegations as true and construing them in the light most favorable to the plaintiff.  See Fuller v. Norton, 86 F.3d 1016, 1020 (10th Cir. 1996).

When a party moves under rule 12(b)(1) for lack of subject matter jurisdiction, the Tenth Circuit has explained:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

---

[4] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's references to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995)(citations omitted).

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998)(quoting Fed. R. Civ P. 56(c)). In applying this standard, the court "examine[s] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Id. As to summary judgment, it is proper only if there is no genuine issue of material fact for determination. See Durham v. Herbert Olbrich GMBH & Co., 404 F.3d 1249, 1250 (10th Cir. 2005)(citation and internal quotations omitted).

A court has an independent obligation to determine its own jurisdiction. See State Farm Mut. Auto. Ins. Co. v. Navarez, 149 F.3d 1269, 1270-71 (10th Cir. 1998)(citation and internal quotations omitted). A court or a party may raise jurisdictional issues at any time. See, e.g., Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842, 844 (10th Cir. 1988)(citation omitted).

## LAW REGARDING SUBJECT MATTER JURISDICTION AND RIPENESS

"[F]ederal courts have subject matter jurisdiction only over 'cases and controversies.'"

United States v. Wilson, 244 F.3d 1208, 1213 (10th Cir. 2001).  A claim's ripeness and whether it "presents a case or controversy, bears directly on this jurisdiction." Id. (citing New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1498-99 (10th Cir. 1995)).  The doctrine of ripeness is "intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Id. (citation and internal quotations omitted).

### LAW REGARDING ABSOLUTE JUDICIAL AND LEGISLATIVE IMMUNITY

"Judges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000)(quoting Henriksen v. Bentley, 644 F.2d 852, 855 (10th Cir. 1981)).  Even if a judge acts in error, with malicious intent or in excess of authority, that judge "does not act in the clear absence of all jurisdiction." Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)).  "Moreover, 'a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.'" Id. (citation omitted).  In deciding whether absolute judicial immunity applies, courts are to look at the "functions [the immunity] protects and serves, not [at] the person to whom it attaches." Id. (quoting Valdez v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989)).  Absolute judicial immunity is immunity from suit altogether. See Mireles v. Waco, 502 U.S. 9, 11 (1991)(citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Judges are not entitled to absolute judicial immunity for non-judicial acts, i.e., acts taken that are not in the judge's judicial capacity. See id. (citing Forrester v. White, 484 U.S. 219, 227-229 (1988), and Stump v. Sparkman, 435 U.S. at 360).  "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id.

at 12 (citations omitted).  Judges are, however, entitled to legislative immunity when acting in a

legislative capacity.  See Supreme Court v. Consumers Union of United States, 446 U.S. 719, 734

(1980).

Judges acting in regards to state disciplinary issues sometimes act in a judicial capacity and

sometimes act in a legislative capacity.  A judge acts in a judicial capacity when hearing appeals from

disciplinary proceedings.  See id. at 734.  Because "[d]isciplinary rules are rules of general application

and are statutory in character," because "[t]hey act not on parties litigant but on all those who

practice law in [a state]," and because "[t]hey do not arise out of a controversy which must be

adjudicated, but instead out of a need to regulate conduct for the protection of all citizens," a court

acts in a legislative capacity when it enacts disciplinary rules.  Id. at 731 (citation and internal

quotations omitted).

## LAW REGARDING PROSECUTORIAL IMMUNITY

The Tenth Circuit has stated, concerning prosecutorial immunity:

It is well established that prosecutors are absolutely immune from suit under section
1983 concerning activities intimately associated with the judicial process, such as
initiating and pursuing criminal prosecutions.  It is also well established that this
absolute prosecutorial immunity extends to state attorneys and agency officials who
perform functions analogous to those of a prosecutor in initiating and pursuing civil
and administrative enforcement proceedings.  The rationale for granting absolute
immunity in each of these instances is to allow prosecutors and those performing
equivalent functions the latitude to perform their quasi-judicial tasks absent the threat
of retaliatory section 1983 litigation.

Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1489-90 (10th Cir. 1991)(citations and internal

quotations omitted).

"Absolute immunity does not extend to actions that are primarily investigative or

administrative in nature, though it may attach even to such administrative or investigative activities

-18-

when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." Scott v. Hern, 216 F.3d 897, 908 (10th Cir. 2000)(citations and internal quotations omitted). In drawing this distinction, courts are to look at how "distant a function is from the judicial process and the initiation and presentation of the state's case"; the more distant the function, "the less likely it is that absolute immunity will attach." Id. (citations omitted). "Therefore, when a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." McCormick v. City of Lawrence, 99 Fed. Appx. 169, 172 (10th Cir. 2004)(citations and internal quotations omitted). "[T]here is no question . . . that prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution." Scott v. Hern, 216 F.3d at 909 (citation and internal quotations omitted).

   In the context of state attorney disciplinary proceedings, the Tenth Circuit has stated: "We . . . agree with the courts which have held that bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions." Clulow v. Oklahoma, 700 F.2d 1291, 1298 (10th Cir. 1983)(citing Simons v. Bellinger, 643 F.2d 774 (D.C. Cir. 1980), Kissell v. Breskow, 579 F.2d 425 (7th Cir. 1978), Ginger v. Wayne County Circuit Court, 372 F.2d 621 (6th Cir. 1967), and Clark v. Washington, 366 F.2d 678 (9th Cir. 1966)), overruled on other grounds by, Garcia v. Wilson, 731 F.2d 640 (10th Cir. 1984), aff'd, 471 U.S. 261 (1985).  See Thrower v. Ohio Bar Ass'n, No. 92-3577, 1993 U.S. App. LEXIS 1746, at *3-4 (6th Cir. January 25, 1993)("Bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions.")(citations and internal quotations

omitted).

## LAW REGARDING QUALIFIED IMMUNITY AND DISCOVERY

"Discovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time the allegedly unlawful action occurred." Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992)(citing Siegert v. Gilley, 500 U.S. 226, 231 (1991)). "When responding to a summary judgment motion based on qualified immunity, the opposing party must file an affidavit with a Rule 56(f) motion that demonstrates 'how discovery will enable him to rebut a defendant's showing of objective reasonableness or . . . demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion.'" Ciempa v. Ward, 150 Fed. Appx. 905, 908 (10th Cir. October 19, 2005)(quoting Lewis v. City of Fort Collins, 903 F.2d 752, 758 (10th Cir. 1990)). To accomplish this, "it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." Lewis v. City of Fort Collins, 903 F.2d at 758 (citations and internal quotations omitted).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

28 U.S.C. § 1367(a) recognizes that, when a district court has original jurisdiction over a civil action, it has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c). A district court is "well within its discretion in declining supplemental jurisdiction over the remainder

of" a case when it dismisses a plaintiff's federal claims.  Exum v. United States Olympic Comm., 389 F.3d 1130, 1139 (10th Cir. 2004).   When a federal claim no longer supports supplemental jurisdiction, the Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state law claims without prejudice.  See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995).

## ANALYSIS

The Court will dismiss the Second Amended Complaint.  The Court will dismiss Counts I and II without prejudice, because those claims are speculative and do not present a case or controversy. The Court will dismiss all federal claims in Count III with prejudice, because Ms. Ferrara, as chief disciplinary counsel, is entitled to absolute prosecutorial immunity.  The Court will dismiss all federal claims in Count IV with prejudice, because Ms. Ferrara, Ms. Scott-Mullins, and Ms. Karni are entitled to absolute prosecutorial immunity.  The Court will dismiss Count V with prejudice, because the Justices of the New Mexico Supreme Court are entitled to absolute judicial immunity.  Because the Court is dismissing Counts I, II, III, IV, and V, the Court will also dismiss Count VI.

## I.     THE COURT WILL DISMISS COUNTS I AND II AS THEY ARE TOO SPECULATIVE AND DO NOT PRESENT A CASE OR CONTROVERSY.

The Defendants assert that, inasmuch as their motion to dismiss is based on subject matter jurisdiction, it attacks the factual allegations of the Plaintiffs' complaint, the jurisdictional issue is intertwined with the merits of the case, and thus the motion is properly brought under the summary judgment standard.  See Memorandum in Support at 5.  The Court agrees with the Defendants that they have factually attacked the Plaintiffs' complaint concerning Counts I and II, because they have

factually alleged that no harm has occurred, and they present evidence -- a letter -- of assurances given concerning the interpretation of the rule.  The Court also believes that the jurisdictional issue is intertwined with the merits of the case, because subject matter jurisdiction is "dependent on the same statute which provides the substantive claim in the case" -- subject matter jurisdiction is dependant on the Free Speech clause of the First and Fourteenth Amendments and the Free Speech clause provides the substantive claim for Counts I and II.  The Court will thus treat the motion to dismiss Counts I and II as brought under the summary judgment standard.[5]

The Court does not have subject matter jurisdiction to consider the issues that the allegations in Count I and II of the Stein IV Complaint raise, because the issues are speculative and thus do not present a case or controversy.  To establish Article III standing, a plaintiff must show that: (i) the plaintiff "has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (ii) "the injury is fairly traceable to the challenged action of the defendant"; and (iii) "it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested."  Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004)(citations omitted).

The Tenth Circuit, when discussing a federal court's jurisdiction, has stated:

---

[5] Normally, to avoid unfair surprise, the district court must give the parties notice before converting a rule 12(b)(1) motion into a summary judgment motion. See Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987).  There is no unfair surprise, however, when a district court converts a Motion to Dismiss into one for summary judgment after both parties have submitted material beyond the pleadings. See id. at 260.  The United States Court of Appeals for the Tenth Circuit has held that, "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." Id. (citing Nichols v. United States, 796 F.2d 361, 364 (10th Cir. 1986)).  Here, both parties submitted extensive materials outside the pleadings.  See Exhibits Supporting Plaintiffs Memorandum in Opposition to Defendants' Motion to Dismiss and/or Motion for Summary Judgment; Defendants' Exhibits Attached to Defendants' Memorandum in Support.

> To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. . . .  The threatened injury must be certainly impending and not merely speculative.  A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction.

Id. at 1283-84 (citation and internal quotations omitted).

> In the speech context, the Tenth Circuit has held that

> plaintiffs in a suit for prospective relief based on a "chilling effect" on speech can satisfy the requirement that their claim of injury be "concrete and particularized" by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.

Initiative & Referendum Inst. v. Walker, Nos. 02-4105, 02-4123, 2006 U.S. App. LEXIS 12145, at *15 (10th Cir. May 17, 2006).  The Tenth Circuit has also recognized that a chilling effect on speech "may amount to a judicially cognizable injury in fact, as long as it 'arises from an objectively justified fear of real consequences.'"  Id. at *11-12 (quoting D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir. 2004), and citing Ward v. Utah, 321 F.3d 1263, 1267 (10th Cir. 2003), and Wilson v. Stocker, 819 F.2d 943, 946 (10th Cir. 1987)).  "[M]ere allegations of a subjective chill are not adequate," but "plaintiffs may bring suits for prospective relief in First Amendment cases where they can demonstrate a credible threat of prosecution or other consequences flowing from the statute's enforcement."  Id. at *12 (citation omitted).

Rule 17-304 is titled "Confidentiality of investigations; exceptions; hearings."  Section A states that, with the exceptions stated in the rule, "any investigation and any investigatory hearing conducted by or under the direction of disciplinary counsel or disciplinary counsel's authorized agents shall be entirely confidential" until certain events occur.  Sections B and C address exceptions, and

-23-

Section D states that formal proceedings conducted before a hearing committee or the Disciplinary Board shall be open to the public; that any person may publicly comment thereon; and that attorneys remain subject to the restrictions of rule 16-306 of the New Mexico Rules of Professional Conduct. Rule 16-306 governs attorney's statements pertaining to trial publicity.   See N.M.R.A. § 16-306(A)(prohibiting a lawyer from making an out-of-court statement in a criminal jury proceeding if the lawyer knows or reasonably should know such statement is false or "creates a clear and present danger of prejudicing the proceeding").

Counts I and II are based on speculation.  The Plaintiffs have not pointed to any evidence that any of the Defendants has ever applied rule 17-304 to their particular speech activity.  The Plaintiffs do not support their opinion with any factual allegations that, if the Plaintiffs choose to publicly discuss his disciplinary complaint against disciplinary counsel, which he has already done in a public forum, he will be punished under rule 17-304(A) for the exercise of his First Amendment rights, and will be charged with another ethical violation.  The Plaintiffs have also not shown actions taken by any of the Defendants to bring any action against the Plaintiffs for any alleged violation of N.M.R.A. § 17-304.  More importantly, based on Mr. Parmley's letter, see Letter from Richard J. Parmley, Jr., Chairman of the Disciplinary Board to Jerry Walz at 1 (February 4, 2005), coupled with a reasonable construction of the language of rule 17-304, the scenario that the Plaintiffs fear is unlikely to occur. As Parmley's letter demonstrates, the Disciplinary Board believes the confidentiality provision applies only to disciplinary counsel and staff of disciplinary counsel.  And the Disciplinary Board and counsel have taken a consistent position that rule 17-304 applies to disciplinary counsel only.  It is most likely that the Defendants will apply rule 17-304 in a manner that will not infringe the First Amendment rights of anyone, including the Plaintiffs.

-24-

Further, Ms. Ferrara shares Mr. Parmley's view.  See Affidavit of Virginia Ferrara ¶ 3, at 1 (executed June 28, 2005).  And not only does Ms. Ferrara share the reasonable interpretation that the confidentiality provision applies to Disciplinary Counsel, Ms. Ferrara also affirmatively states that there are no plans to take any disciplinary action against Mr. Stein for publicizing his public filing of his disciplinary complaint against her.  See id. ¶ 4, at 1.  Also, Ms. Ferrara has already been cleared of the charges that Mr. Stein brought.  See Letter from Bradley D. Tepper to Stuart L. Stein, Esq. at 1-2 (dated January 20, 2005).  The record thus lacks any allegation of acts that support the Plaintiffs' contention that the Defendants may bring an action against them pursuant to rule 17-304.

It is true that there is no express language in the challenged rule that states it applies only to disciplinary counsel.  But the Disciplinary Board's restrictive reading of the rule is not inconsistent with the plain language and does not create an absurd result.  The rule is explicit that the investigation and the investigatory hearing conducted by the disciplinary counsel remains confidential.  See N.M.R.A. § 17-304(A).  The rule's plain language thus applies certain confidentiality requirements to disciplinary counsel.

Moreover, the rule does not expressly require the complaining party to remain silent as to his or her alleged underlying complaint.  See id. The rule does not expressly restrict the complaining party nor the attorney against whom the complaint was filed from publicly speaking about the alleged misconduct or the complaint.  In the end, it appears, from the record before the Court, that the only people who hold the interpretation that rule 17-304(A)'s confidentiality provision may apply to third-party complainants are the Plaintiffs.

Moreover, the Board's construction, that the confidentiality provision applies only to disciplinary counsel, not only is shared and/or desired by all parties, and is reasonable, but it does not

-25-

offend the Plaintiffs' First Amendment rights.  The Board's interpretation does not chill the Plaintiffs' exercise of their First Amendment rights.

Thus, that the Plaintiffs have not pointed to any past disciplinary proceedings under the rule concerning the desired speech, that the Plaintiffs have not themselves been disciplined under the rule even though they issued a press release, and that the chief disciplinary counsel and disciplinary board chairman both agree that rule 17-304 does not apply to the desired speech in this case, show that the claims in Counts I and II are speculative and that the Plaintiffs are not in danger of imminent harm. See Winsness v. Yocom, 433 F.3d 727, 735-736 (10th Cir. 2006)(finding no credible threat of enforcement based on prosecutorial disavowals of any intention to enforce the statute in the future); D.L.S. v. Utah, 374 F.3d at 974-75 (finding no threat of prosecution where the plaintiff had been neither arrested nor charged for violating the challenged statute, where prosecutors disavowed any intention to enforce the statute, and where the Supreme Court had recently struck down a similar law as unconstitutional); Faustin v. City & County of Denver, 268 F.3d 942, 948 (10th Cir. 2001)(finding no "real and immediate threat" of prosecution because of a city prosecutor's determination that the plaintiff's conduct did not violate the challenged statute).

The Plaintiffs do no more than point to a disciplinary rule that they believe may be unconstitutional and have advanced an as-applied constitutional claim.  This argument is not sufficient to establish a case or controversy.  The Plaintiffs still want the Court to give them a judicial ruling or an advisory opinion.  The Plaintiffs argue that the letter opinion has no precedential value either to the Plaintiffs or to other attorneys, and that it gives no comfort to their fears of retaliation should future discussion of confidential ethical complaints be made once the Court dismisses this case.  Like the LAC, the membership of the Disciplinary Board changes over time.

-26-

The Plaintiffs contend that the Defendants' position would be on firmer ground if the Supreme Court were to issue an opinion that rule 17-304 applies only to disciplinary counsel and not to other members of the State Bar of New Mexico, and to publish the opinion in the Bar Bulletin, New Mexico Reports, and Pacific Reporter. The Plaintiffs contend that an alternative disposition could be an agreed order/opinion in this case effectuating the thrust of the letter, and this Court could publish that opinion in the Federal Supplement. The Plaintiffs suggest that such an order/opinion would be reflected in the annotations of the Rules Governing Discipline the next time they are published. The Plaintiffs use their response to invite the Defendants' counsel to informally consult with Mr. Stein to draft the proposed order for this Court's entry and publication. Alternatively, the Plaintiffs suggest that the Defendants' counsel can merely agree to their proposal in their Reply Memorandum and end the matter of these two counts of the Second Amended Complaint. The Plaintiffs presumably are asking the Court to grant them their requested relief as a way of ending this matter.

Hence, Counts I and II do not present so much a real case or controversy, but a request for an advisory, published opinion in Federal Supplement. The Plaintiffs want a published court ruling that rule 17-304 applies only to Disciplinary counsel. The federal courts do not, however, exist for the purpose of issuing published opinions, but for the purpose of deciding cases in a constitutional manner. While the Plaintiffs' primary concern appears to be how the Defendants will indicate their position, the Defendants have stated their position and have stated it clearly and unequivocally. The Plaintiffs' claims, therefore, remain speculative. As of yet, there is no case or controversy that presents claims ripe for adjudication.

Unless and until the Defendants either threaten to apply or actually apply rule 17-304 to the

-27-

Plaintiffs' particular speech activities, the Plaintiffs have not stated a claim as a matter of law.  The Plaintiffs' unfounded fear that the Defendants may file a disciplinary action against them if they speak out publicly on a disciplinary complaint they file pursuant to 17-304 is conjecture and speculative. And if the scenario that the Plaintiffs fear should come about during the pendency of this case, there is a mechanism to trigger the Court's jurisdiction to adjudicate a case in controversy that would be ripe for adjudication, and the Plaintiffs have access to the federal courts for relief should the Disciplinary Board ignore the letter opinion and bring charges in the future.  There is no genuine issue of fact that Counts I and II are speculative and not ripe for determination, and thus the Court will dismiss Counts I and II without prejudice.[6]

## II.    THE COURT WILL DISMISS COUNT III BASED ON ABSOLUTE PROSECUTORIAL IMMUNITY.

The Plaintiffs, in Count III of the Second Amended Complaint, allege that Ms. Ferrara acted in violation of their rights: (i) she received the three-member hearing committee's determination that it had no jurisdiction to hear the Plaintiffs' petition for declaratory relief before July 1, 2004 and she did not timely serve the committee's determination on the Plaintiffs, on opposing counsel, Mr. Walz, or on Mr. Parmley; (ii) after the Plaintiffs filed a Motion for Default concerning the Bell declaratory action -- not knowing that the three-member panel had already found that it did not have jurisdiction to hear a declaratory action -- Ms. Ferrara forwarded a copy of the committee's written decision; (iii) after the Plaintiffs forwarded such decision to the Tenth Circuit, Ms. Ferrara personally contacted the Clerk of the Supreme Court of New Mexico, *ex parte*, to request that the Supreme Court of New Mexico appoint a special review committee to review the Hearing Committee opinion, without notice

---

[6] At the hearing on this motion, the Plaintiffs did not disagree with the Court's initial inclination to dismiss Counts I and II.  See Transcript of Hearing at 24:2-4.

to the Plaintiffs or Mr. Walz.  <u>See</u> Second Amended Complaint for Declaratory Judgment and Damages ¶¶ 36-55, at 10-14.[7]

The Court believes that Ms. Ferrara was acting in a prosecutorial role when she delayed forwarding the committee's decision to Mr. Walz and to the Plaintiffs, and when she had any contact with the Supreme Court concerning the committee's decision, without notice to the Plaintiffs or to Mr. Walz.[8]  The Tenth Circuit in <u>Clulow v. Oklahoma</u> stated in broad language that "bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions."  700 F.2d at 1298.  Ms. Ferrara as chief disciplinary counsel is such an official acting in a prosecutorial role and is entitled to prosecutorial immunity for the allegations in Count III.  If during the litigation of a case, a criminal prosecutor fails to forward a pleading or a decision to opposing counsel, or has inappropriate *ex parte* communications with the presiding judge, the prosecutor is entitled to prosecutorial immunity even if the actions violated a person's constitutional rights.  All of these alleged actions occurred during

---

[7] Because both parties have presented matters outside the pleadings, the Court will treat this motion to dismiss Counts III, IV, and V as a motion for summary judgment pursuant to rule 12(c). <u>See</u> Fed. R. Civ. P. 12(c)("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").  Here, the Defendants' motion is a motion to dismiss and/or a motion for summary judgment.  The Plaintiffs were therefore on notice that the Defendants were seeking dismissal on summary judgment.  Also, the Plaintiffs have presented evidence outside the pleadings and have not objected to the Court deciding the matter on summary judgment.

[8] Although the Defendants did not, in their motion, specifically argue prosecutorial immunity under Count III, they did make such an argument concerning Count IV, <u>see</u> Memorandum in Support at 15-16, and they made the argument specifically as to Count III at the hearing on this motion, <u>see</u> Transcript of Hearing at 11:2-14:18, and the Plaintiffs did not object to the issue being raised at the hearing, <u>see</u> generally Transcript of Hearing.

an ongoing disciplinary proceeding, and thus Count III is barred based on prosecutorial immunity.

Although Ms. Ferrara may not have been specifically assigned to the matter, she is chief disciplinary counsel, and has supervisory authority over disciplinary proceedings. As a supervisor of the disciplinary proceedings, she acts in a prosecutorial or quasi-judicial role when she acts or fails to act in relation to those proceedings.[9]

The Plaintiffs also request some discovery on this issue before the Court dismisses Count III. The Plaintiffs, however, have not filed a rule 56(f) affidavit showing the Court how such discovery "will enable [them] to . . . demonstrate a connection between the information he would seek in discovery and the validity of the defendant's [absolute] immunity assertion." Ciempa v. Ward, 150 Fed. Appx. at 908.  Here, the Plaintiffs do not, by rule 56(f) affidavit or otherwise, show how the discovery sought will enable them to demonstrate a connection between the information and the immunity defense. The Plaintiffs have done no more than "merely assert that additional discovery is required to demonstrate a factual dispute . . . ," and this assertion is insufficient. Lewis v. City of Fort Collins, 903 F.2d at 758.[10]  The Plaintiffs contend that discovery is needed concerning the issue of

---

[9] The Court also notes that, although the Plaintiffs contend that Ms. Ferrara violated their constitutional rights when she did not forward the Thayer Committee's determination in violation of N.M.R.A. 17-313(E), rule 17-313(E) provides that: "Upon the filing in his office of the record of the formal hearing and the findings of fact, conclusions and recommendations of any hearing committee, the chairman of the Disciplinary Board shall give written notice of the filing date thereof with copies of the findings, conclusions and recommendations to chief disciplinary counsel, prosecuting disciplinary counsel, the respondent and counsel for the respondent." It appears that the rule requires the Chairman of the Disciplinary Board to give written notice, and not Ms. Ferrara as chief disciplinary counsel.

[10] Although the Tenth Circuit in Ciempa v. Ward and in Lewis v. City of Fort Collins discussed discovery in the qualified immunity context rather than in the absolute immunity context, the same policies and principles that caution against discovery in a qualified immunity context, unless the need can be shown in a rule 56(f) affidavit, also caution against discovery in the absolute immunity context unless the need can be shown in a rule 56(f) affidavit. "Qualified immunity, like

the Defendants' motive or intent.  The "functional test," however, "for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent."  Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995).  Ms. Ferrara's motives are not relevant to absolute immunity, and the discovery therefore is not needed.

The Court also does not see how additional discovery will help the Plaintiffs invalidate the prosecutorial immunity in this situation.  There is no genuine issue of material fact that Ms. Ferrara is entitled to absolute prosecutorial immunity.  The Tenth Circuit's language concerning state bar disciplinary counsel and prosecutorial immunity is broad, and Ms. Ferrara's actions, as chief disciplinary counsel, during the course of the disciplinary proceedings, fit squarely within the Tenth Circuit's broad language.[11]  The Court will dismiss all federal claims brought in Count III based on absolute prosecutorial immunity.

## III.    THE COURT WILL DISMISS COUNT IV BASED ON ABSOLUTE PROSECUTORIAL IMMUNITY.

All federal claims that the Plaintiffs advance in Count IV are subject to dismissal pursuant to prosecutorial immunity.  The Plaintiffs allege, in their complaint, that the following actions violated their rights: (i) the Plaintiffs informed Ms. Scott-Mullins that the LAC was applying the rules in an unconstitutional fashion in violation of decisions by the Supreme Court of the United States; (ii) Ms.

---

absolute immunity, is also available as an affirmative defense that protects public officials not only from liability, but also from the burdens of trial and discovery."  Spurlock v. Satterfield, 167 F.3d 995, 1005 (6th Cir. 1999)(citation omitted).

[11]  The Plaintiffs' Second Amended Complaint does not indicate whether they are bringing this action for Counts III, IV, and V against the state actors in their official capacity or in their individual capacity.  The Court in its analysis assumes that the Plaintiffs are suing the state actors under 42 U.S.C. § 1983 in their individual capacities, because a suit against the state actors in their official capacities would be precluded where injunctive relief is not sought.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

Ferrara was aware of the Supreme Court decisions; (iii) Ms. Scott-Mullins never responded to the Plaintiffs' letter that pointed out the burden of the State of New Mexico to show that any legal advertising found to be in violation of any legal advertising rules could not be supported or proved by speculation or conjecture; (iv) Ms. Scott-Mullins filed ethical charges against the Plaintiffs; (v) the then chair of the disciplinary committee stayed the ethical complaint just days before Ms. Scott-Mullins was required to supply significant discovery to the Plaintiffs; (vi) Ms. Scott-Mullins and Ms. Karni took a "baseless ethical complaint from an unstable daughter of a now incapacitated client of Plaintiffs and filed an unsupported ethical complaint" without adequate investigation or Due Process notice to the Plaintiffs of the charges "to destroy the practice of Plaintiffs without adequate basis"; (vii) complaining daughter of the client became overly friendly with Ms. Ferrara, Ms. Scott-Mullins, and Ms. Karni; (viii) Ms. Scott-Mullins and Ms. Karni did not produce discovery when required to do so, failed to speak up when they had information that one of their attorney witnesses lied in written correspondence to keep information from the Plaintiffs, and failed to do a proper investigation by making a conscious decision not to contact the other child of the Plaintiffs' client who was a key witness for the Plaintiffs until just days before his testimony at the trial; and (ix) Ms. Ferrara, as supervisor of Ms. Karni and Ms. Scott-Mullins, approved all their actions, and failed to properly supervise the flawed investigation of her subordinates, and failed to take remedial action when contacted about Ms. Karni and Ms. Scott-Mullins' unethical conduct. Second Amended Complaint for Declaratory Judgment and Damages ¶¶ 57-74, at 15-19.

Each of the above actions was allegedly done either by chief disciplinary counsel or assistant disciplinary counsel of the Supreme Court's Disciplinary Board in connection with disciplinary proceedings. Again, the Tenth Circuit has stated that "bar officials charged with the duties of

investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions." Clulow v. Oklahoma, 700 F.2d at 1298. Ms. Karni, Ms. Scott-Mullins, and Ms. Ferrara are all disciplinary counsel, and at the time of the complained of actions, were acting in such a role, and thus are entitled to absolute prosecutorial immunity. N.M.R.A. 17-105 provides that disciplinary counsel have the power "to investigate or to refer for investigation to assistant disciplinary counsel or to an investigator, all matters involving alleged misconduct by an attorney subject to the jurisdiction of the Supreme Court when called to his attention by the written complaint of any person," and have the power "to prosecute all disciplinary proceedings before the hearing committees, the Disciplinary Board and the Supreme Court either in person or through assistant counsel."  N.M.R.A. § 17-105(B)(2) and (4).  N.M.R.A. § 17-307(A) provides that "[c]hief disciplinary counsel, deputy disciplinary counsel, or assistant counsel designated by the chair of the Disciplinary Board shall initiate all investigations, whether upon complaint or otherwise."

The Court is aware of the tension between cases that find that criminal prosecutors are not entitled to absolute immunity when they are acting as police officers in an investigative function, and the Tenth Circuit's precedent concerning state bar disciplinary counsel.  The Tenth Circuit has, however, decided that state disciplinary counsel act in the role of a prosecutor when, in conformance with their duties, they investigate a case involving attorney discipline, and, as a consequence, enjoy absolute prosecutorial immunity for actions occurring in that role.

Here, the alleged failure to investigate properly, the alleged failure to oversee the investigation properly, the alleged filing of the complaint without notice to the plaintiffs, the non-responsiveness to the Plaintiffs' letter, the alleged failure to produce discovery, the alleged failure to disclose

information that an attorney witness lied in written correspondence, and the over-friendliness to the complaining daughter all relate to the state bar disciplinary counsel's functions to investigate, draw up, and present a disciplinary complaint.  There is no genuine issue of material fact that Ferrara, Scott-Mullins, and Karni are entitled to absolute prosecutorial immunity.  The Court will therefore dismiss all federal claims in Count IV based on absolute prosecutorial immunity.

For the reasons stated previously, the Court will deny the Plaintiffs' request to engage in discovery concerning this issue.  The Plaintiffs have not shown, and the Court does not see, how discovery will invalidate the absolute prosecutorial immunity defense.

## IV.   THE COURT WILL DISMISS COUNT V BASED ON ABSOLUTE JUDICIAL IMMUNITY.

Count V sets forth civil rights claims against the Chief Justice and Associate Justices of the Supreme Court of New Mexico.  The Plaintiffs allege the following: (i) Ms. Ferraro unethically had *ex parte* contact with the Supreme Court Justices; (ii) the Supreme Court Justices then issued an "Order to Show Cause" concerning hearing committees finding that it did not have jurisdiction to hear the declaratory action; (iii) the Supreme Court Justices are members of a court of limited jurisdiction and their issuance of the Order to Show Cause was in the clear absence of all jurisdiction because no party invoked the Supreme Court's jurisdiction, but rather, the Supreme Court issued the Order to Show Cause *sua sponte*; (iv) the Supreme Court issued the Order to Show Cause under a case style of the United States District Court of the District of New Mexico; and (v) the Order to Show Cause and the subsequent October 26, 2004 Order violated the Plaintiffs' Due Process and Equal Protection rights.

The Supreme Court of New Mexico has the authority to regulate attorneys and the practice of law pursuant to N.M.S.A. § 36-2-1, which provides: "The supreme court of the state of New

Mexico shall, by rules promulgated from time to time, define and regulate the practice of law within the state of New Mexico." Further, the Supreme Court has original jurisdiction "in quo warranto and mandamus against all state agencies, boards, and commissions, and shall have a superintending control over all inferior courts." N.M. Const. art. VI, § 3. The Supreme Court also has "appellate jurisdiction as may be provided by law." N.M. Const. art. VI, § 2.

Attorneys regularly admitted to practice law in New Mexico are "subject to the exclusive disciplinary jurisdiction of the Supreme Court and the Disciplinary Board . . . ." N.M.R.A. § 17-201. The Supreme Court has adopted and promulgated rules that govern attorney discipline, and has created an administrative disciplinary process. See N.M.R.A. §§ 17-101-106, 17-201-214, 17-301-316.

The Defendants, Justices of the Supreme Court of New Mexico assert that absolute judicial immunity precludes the Plaintiffs' claims against them. See Memorandum in Support at 20-22. The Plaintiffs concede that the actions of these Defendants in issuing the two orders were judicial in nature. See Memorandum in Opposition at 19. The Plaintiffs contend, however, that the Supreme Court Justices are not entitled to judicial immunity because they were acting "in the clear absence of all jurisdiction," because they issued the Order to Show Cause *sua sponte,* no party invoked the Supreme Court's jurisdiction, and no rule exists that would allow the Supreme Court to issue an order to show cause independent of a case before it. See Memorandum in Opposition at 19-20.

First, the Court concludes that the complained of acts in Count V are judicial, rather than legislative, in nature. The issue whether a committee has jurisdiction over a specific matter is judicial in nature. Determining jurisdiction is a function that the judiciary normally performs. The Court also concludes that the Justices of the Supreme Court are entitled to judicial immunity because, even if

-35-

the matter was brought before them improperly, such an error appears to be procedural in nature, and the subject matter of the order falls within the Supreme Court's supervisory authority over attorney discipline matters.

The Court notes that, "[i]n determining the scope of a judge's jurisdiction, it must be construed broadly where the issue is the immunity of the judge." Stump v. Sparkman, 435 U.S. at 356.  As the Tenth Circuit stated in Whitesel v. Sengenberger, 222 F.3d at 867, "[e]ven if a judge acts in error, with malicious intent or in excess of authority," that judge "does not act in the clear absence of all jurisdiction," and "a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Id. (citation omitted). That the Supreme Court addressed an issue that was brought before it in an allegedly flawed manner, and allegedly in excess of its authority to bring the matter up *sua sponte*, fits directly within Whitesel v. Sengenberger's language concerning grave procedural errors and excess of authority.  The Plaintiffs do not anywhere argue that the Supreme Court did not have authority over the subject matter of the order to show cause, but rather, that the court improperly invoked such authority.  This action by the Supreme Court at worst is a grave procedural error for which the Justices are entitled to absolute judicial immunity, because the order's subject matter was squarely within the Court's authority over attorney discipline.  Although no New Mexico rules allow the Supreme Court to issue orders like this one -- *sua sponte* without the parties seeking such -- the Court is not aware of any New Mexico rules that specifically prohibit such action.

The Court does not believe that appellate judges are any less entitled to judicial immunity than trial judges.  Judicial immunity "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise

their functions with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 553-54 (1967), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982). The purpose of absolute judicial immunity is also to ensure that a judge "does not fear that unsatisfied litigants may hound him with litigation charging malice or corruption." Id. (citation and internal quotations omitted). The purposes behind judicial immunity apply equally to appellate judges.

Finally, as stated above, the Plaintiffs are not entitled to limited discovery on the issue of judicial immunity. They have not shown, either in their brief or by a rule 56(f) affidavit, how the discovery they are seeking will shed light on the validity of the judicial immunity defense. The Court also does not see how discovery would invalidate the judicial immunity defense.

Because the Court finds that the Justices of the Supreme Court were acting in a judicial capacity, and were not acting in the clear absence of all jurisdiction, the Court finds that there is no genuine issue of material fact that the Justices of the Supreme Court are entitled to absolute judicial immunity. The Court will therefore dismiss Count V.

## V.    THE COURT WILL DISMISS ALL REMAINING STATE LAW CLAIMS WITHOUT PREJUDICE.

Insofar as the Plaintiffs bring state law claims in Counts III and IV of their Second Amended Complaint, the Court will dismiss such claims without prejudice. The Court has already dismissed all of the claims over which it had original jurisdiction, and thus will "decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). The Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state law claims without prejudice when a federal claim no longer supports supplemental jurisdiction. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d at 1237 (10th Cir. 1997). Because the Court has dismissed all of the Plaintiffs' federal claims, it will dismiss the Plaintiffs' state law claims without prejudice.

-37-

**VI.    THE COURT WILL DISMISS COUNT VI.**

Count VI seeks attorney fees and costs.  The Court has dismissed all of the claims that the Plaintiffs advance.  Accordingly, the Plaintiffs are not entitled to fees and costs under 42 U.S.C. § 1988.  The Court will dismiss Count VI.

**VII.   THE COURT WILL NOT ALLOW THE PLAINTIFFS TO FILE A THIRD AMENDED COMPLAINT.**

The Plaintiffs request that, should the Court articulate that the allegations do not, in the particular circumstances, state a cause of action upon which the Court can grant relief, the Court grant them leave to file a Third Amended Complaint.  See Memorandum in Opposition at 23.  The Plaintiffs remind the Court that the Federal Rules of Civil Procedure require that it should grant leave to amend freely.  See Leaseamerica v. Eckel, 710 F.2d 1470, 1473 (10th Cir. 1983)("Leave to amend a complaint shall be freely granted when justice requires.").

While the Court must be mindful to protect litigants' First Amendment rights, the Plaintiffs have filed a lot of claims and cases without much, if any, success.  The Plaintiffs continue to expend considerable resources with their litigation without much success.  The Plaintiffs have already amended their complaint twice, and in their request to amend their complaint a third time, they do not tell the Court how they would like to amend it, or how an amendment will cure the problems discussed throughout this opinion.  Without any reasoning from the Plaintiffs, the Court has no way to determine whether "justice requires" an amendment.

Finally, the Plaintiffs do not attach a copy of their third proposed amended complaint and they thus have not complied with the Court's local rules.  Local rule 15.1 requires that "[a] proposed amendment to a pleading must accompany the motion to amend."  D.N.M.LR-Civ. 15.1.  The Court has no way of determining whether the Plaintiffs should be allowed to file a third amended complaint.

Because the Plaintiffs have not complied with the local rules and have not stated any basis for amending the complaint, the Court will deny their request to file a third amended complaint.

## VIII.   THE COURT WILL NOT RESTRICT THE PLAINTIFFS' ABILITY TO FILE NEW CLAIMS AT THIS TIME.

In Christensen v. Ward, 916 F.2d 1462 (10th Cir. 1990), the Tenth Circuit imposed tough sanctions on a plaintiff who was "determined to continue to litigate the same arguments which have been repeatedly rejected by simply repackaging those arguments and adding new defendants." Id. at 1469. In addition to hefty monetary sanctions, the Tenth Circuit stated:

> Mr. Christensen is prohibited from filing any further complaints in the United States District Court for the District of Utah, or any appeals in this court, that contain the same or similar allegations as those set forth in his complaint and other pleadings in the cases at bar (including any direct or indirect challenge to previous court proceedings or judgments referred to herein) . . . .

Id.

The Defendants contend that the Plaintiffs stubbornly continue with their agenda to disrupt their ongoing disciplinary proceedings by filing multiple federal claims against those charged with the duty to prosecute and decide the matters. See Memorandum in Support at 24. The Defendants contend that the Plaintiffs have passed the limit of inventive advocacy and are now in frivolous and vexatious litigation territory. See id. The Defendants contend that the Stein IV claims are particularly troublesome, as the Plaintiffs wantonly disregard long-standing legal precedent and craft spurious claims against dedicated public employees that are barred as a matter of law. See id. The Defendants ask the Court to take strong and swift action to ensure that the Plaintiffs' pleading practice does not continue. See id.

The Plaintiffs' pleadings and choice of legal themes in the ongoing state action suggest that the Plaintiffs are aware that they have raised the same issues in many instances in the state forum that

they are now advancing in federal court.  The Plaintiffs must be careful that they do not file so quickly and do not file so many federal constitutional lawsuits that are not actionable that the federal court puts some limits on their ability to file further actions.  On the other hand, the Plaintiffs' claims involve First Amendment rights, and the federal courts should be slow to foreclose challenges that may be necessary to preserve this fundamental liberty.  Moreover, there are no longer any state proceedings that are ongoing that would warrant abstention.  Accordingly, the Court will not, at this time, impose any restrictions on the Plaintiffs' ability to come to federal court.

      **IT IS ORDERED** that the Defendants' Motion to Dismiss and/or for Summary Judgment is granted.  The Court will dismiss Counts I and II without prejudice.  The Court will further dismiss all federal claims in Counts III, IV, and V with prejudice.  The Court will dismiss Count VI.  Finally, the Court will dismiss any state claims without prejudice.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Stuart L. Stein
The Stein Law Firm
Albuquerque, New Mexico

    *Pro Se Plaintiffs*

Jerry A. Walz
Martha Chicoski
Paula Noonan
Walz & Associates
Cedar Crest, New Mexico

    *Attorneys for the Defendants*

-40-